JOHANNA CONNOLLY *vs.* LOUIS SEITMAN.

DECEMBER 22, 1939.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

30

CAPOTOSTO, J. This is an action of trespass to recover damages for personal injuries alleged to have been caused by the defendant in the operation of an automobile. Although the writ in the instant case is in trespass, the parties in their pleadings and proof treated the case as an action of trespass on the case for negligence.

The case was tried before a jury in the superior court and resulted in a verdict for the plaintiff for $500. Defendant's motion for a new trial was heard and denied. The case is before us on the defendant's exceptions to certain rulings during the trial, and to the denial of his motions for a directed verdict and for a new trial.

The plaintiff was struck by defendant's automobile while on the westerly crosswalk at the intersection of Mathewson and Westminster streets in the city of Providence, shortly before 5 o'clock, p.m., on Saturday, December 4, 1937. Mathewson street runs approximately north and south, and Westminster street runs approximately east and west. Both are one-way streets, with vehicular traffic moving south on Mathewson street and west on Westminster street, the latter being about twenty-five feet wide from curb to curb. A traffic officer was on duty at this intersection at the time of the accident.

Only the plaintiff and the defendant testified as to how the accident happened. The plaintiff testified, in substance, that after the traffic officer had stopped westbound traffic on Westminster street and had given a signal for traffic to move on Mathewson street, she was one of a group of pedestrians who, walking on the westerly crosswalk of Westminster street, were crossing from the northwesterly to the southwesterly corner of the intersection; that because of her age, she became the last one of that group while crossing the intersection; that when she was a short distance from the *southerly* curb of Westminster street she saw the defendant's automobile almost on top

of her; that she tried to reach the sidewalk but was struck on the left hip by the right fender of the automobile when she was not "more than two feet from the curb", being thrown to the ground "right up 'agin' the curbstone, between the machine and curbstone."

The defendant's testimony in effect was that following a signal from the officer for westbound traffic to proceed on Westminster street, his automobile was the third or fourth one in line and some two or three feet behind another automobile as he approached the crosswalk in question at a speed of about five miles an hour, and that he did not see the plaintiff until after his automobile had struck her.

The traffic officer, who was called as a witness by the defendant, did not see the accident. The first time he noticed the plaintiff was when she was the center of an increasing group of people on the southwesterly corner of the intersection after the accident. The substantial part of his testimony is that, when he was questioning the plaintiff and the defendant at that time, the former told him that she was crossing "from the northwest corner to the southwest corner of Westminster street" when she was struck, while the latter said that "he didn't see the lady until she was right in front of him."

The defendant contends that the trial justice should have granted his motion for a directed verdict. Under our well-established rule, the evidence and the reasonable inferences therefrom are to be construed most favorably to the plaintiff on defendant's motion for a directed verdict. The plaintiff's evidence in this case fairly shows that, while walking across the intersection in question at a proper time and place, she had crossed almost the entire width of Westminster street when she was struck by the defendant's automobile. The defendant's only excuse is that he did not see her. In these circumstances, the de-

fendant's motion for a directed verdict was properly denied. *Dwinell* v. *Oakley,* 61 R. I. 88, 200 A. 445; *Gilfoil* v. *Fishbein,* 62 R. I. 277, 5 A. 2d. 232. His exception on this point is therefore overruled.

Contending that the trial justice erred in denying his motion for a new trial, the defendant, disregarding an injury to the plaintiff's left hip, argues that the abrasions on the plaintiff's right leg were physical facts which necessarily proved that at the time of the accident she was walking in the opposite direction from the one she stated in her testimony. His conclusion from this premise is that the plaintiff stepped off the curb at the southwesterly corner of the intersection and, taking one or two steps in the highway, walked into the front fender of the defendant's automobile.

We cannot follow the defendant in this contention. The abrasions on the plaintiff's right leg are physical facts showing injury, but it does not follow that they of necessity prove how or where she was struck by the defendant's automobile. All of the positive evidence is contrary to the above contention.

We find nothing in the transcript before us showing that the plaintiff's testimony was not worthy of belief. In such a situation, it was peculiarly within the province of the jury and of the trial justice, who saw and heard the plaintiff testify, to determine the credibility of her testimony. Both accepted her version of the accident. We cannot say from our examination of the evidence that the trial justice was clearly wrong in approving the jury's verdict and in denying the defendant's motion for a new trial. The defendant's exception on this point is overruled.

The defendant relies on his exception to the refusal of the trial justice to grant his request that six issues be submitted to the jury for special verdicts thereon, in accordance

with G. L. 1938, chap. 534, §2. The pertinent part of that section is as follows: "§2. In any case the court may, and upon request of either party shall, direct the jury to return a special verdict upon any issue submitted to the jury. Such issues shall be settled by the justice presiding at the trial, and either party may except to his rulings thereon. . . ."

This statute was originally enacted as part of P. L. 1876, chap. 563, sec. 7, and has remained in force with no material change ever since. While its language is clear, it is apparent from our reported cases that difficulty sometimes arises in its application. In *McQuillan* v. *McQuillan*, 83 A. (R. I.) 401, the court held that the evident intention of the statute was to give either party, subject to regulation by the court, the right to submit to the jury such certain and specific questions, based upon the issues in the case, as such party may desire. It further held that if the special question was not based on an issue in the case, or was simply frivolous or unimportant, or involved some undisputed fact, or was so drawn that it would confuse the jury, it would become the duty of the court to require such changes in or wholly disallow the proposed question as the circumstances might require.

In *Reid* v. *Rhode Island Co.*, 28 R. I. 321, at page 326, the court, after quoting certain language from *McCormack* v. *Phillips*, 34 N. W. (Dak.) 39, 57, to the effect that it is not *any* question that the ingenuity or curiosity of counsel may frame that is to be submitted to the jury, says: "The question to be submitted must not only be pertinent, but it must be one the answer to which will have some conclusive effect in determining the case, or in solving a material issue in it." In *Williams* v. *Allen, T. T.*, 44 R. I. 14, the court says that one purpose of the statute is to direct the attention of the jury specifically to the decision of an issue which has a direct relation to the general verdict and which is of such importance that the correctness of the general verdict may

properly be tested by the special finding. It there held that "it is not the right of a party to have a special finding on *every* issue in a case." (italics ours)  To the same effect see *Maynard's Motor Equip. Co.* v. *Scotti,* 50 R. I. 134.

In the case of *Currie* v. *Nathanson,* 57 R. I. 351, we recently held that it is not the duty of the trial justice to require the jury to return a special finding on an issue that is not material in the case on trial.  But we also held, citing *Heathcote* v. *Barbour,* 39 R. I. 485, and *Doyle* v. *Ralph,* 49 R. I. 155, that "under this statute it is error on his part to refuse a request by a party to submit to the jury, for a special finding, any issue which *really is material* and which would assist the requesting party, upon a review of the testimony before the trial justice or this court, in presenting properly the question whether or not the verdict or finding was supported by the evidence." (italics ours)

We have referred to the above decisions because we have noted a growing tendency of recent origin to depart from the commendable restraint with which requests for special findings were heretofore made in the trial of civil cases before a jury.  It must be obvious, on reflection, that the unnecessary multiplication of requests for special findings tends to confuse a jury, and may defeat the very purpose that the special findings are intended to serve.

It is clear that a request for a special finding as to undisputed or undenied evidence is properly refused.  Such a request is not, in the words of the statute, directed to "any *issue* submitted to the jury." (italics ours)  At best, it amounts to nothing more than to an inquiry whether the jury believed the evidence of a certain witness or witnesses. As was said in *King* v. *Providence Gas Co.,* 90 A. 4, (R. I.), "if such inquiries were permitted, they would be innumerable."

It is also clear that it is not error to refuse requests for special findings where the answers thereto concern immaterial issues in the case, the determination of which would not be decisive of the party's rights or necessarily affect the general verdict. *Maynard's Motor Equip. Co.* v. *Scotti, supra*. To be pertinent, a special finding must be directed to an issue in the case that "really is material" and will be of assistance in the manner set forth in *Currie* v. *Nathanson, supra*.

Whether a request for special finding, even if proper in form, should be granted depends upon the particular facts in each case, and not upon a general rule to be applied blindly in reference to any issue of fact in the case. It may be argued that the language in some of our decided cases seems to be contrary to the plain words of the statute in that it seems to state that a request for a special finding or findings is properly refused if the material issue or issues of fact to which such request is directed must necessarily be determined by the jury in their general verdict. This is a possible interpretation of certain language of the court in *St. Jean* v. *Lippitt Woolen Co.*, 69 A. (R. I.) 604, and in *Lopato* v. *Hayman*, 43 R. I. 271, if taken literally and without reference to all the circumstances in those cases.

In the *St. Jean* case, the court overruled the plaintiff's exception to the refusal of the trial justice to submit his request for a special finding as to whether or not the defendant had been negligent by merely saying that: "This was properly refused, as a general verdict for the plaintiff would necessarily have found the affirmative of this issue." In the *Lopato* case, the court sustained, in the following language, the ruling of the trial court in refusing to submit certain special findings requested by the plaintiff: "An examination of the special findings submitted shows that the first and second would be determined by the jury in their general verdict . . . ."

When these two last opinions are read as a whole, it is apparent to us that the court expressed itself in such general language because it found that, on review, the refusal of the requested special findings became immaterial and, therefore, not prejudicial to the party requesting such findings. Thus interpreted, these cases are in accord with the view expressed by us in *Currie* v. *Nathanson, supra.*

In our opinion, the statute under consideration is of assistance if resorted to with moderation and applied with sound discretion by both the bench and bar. Otherwise, it may readily degenerate into a means of mystifying and confusing the jury and thus impair the course of orderly procedure in the trial of cases. It may be of assistance here to recall the comment of this court in *Healey* v. *N. Y., N. H. & H. R. R. Co.,* 20 R. I. 136. In considering the same statute now before us, at page 139 of that opinion, the court says: "And here we may suggest that it would be well for the trial court, in its discretion, to limit *as far as may be* the number of issues submitted to the jury under the statute, in order that they may not be *confused,* and that such questions as are necessarily involved in the general verdict may be excluded, *as far as possible,* from the special findings." (italics ours)

Our examination of the special findings requested by the defendant and refused by the trial justice in the instant case shows that the first, second and fifth requests for such findings relate to issues of no controlling force on the general verdict. Questions whether the plaintiff was following the instructions of the traffic officer at the time she was crossing the street; or whether the defendant was following such instructions while operating his automobile towards the cross walk where the plaintiff was crossing; or whether the automobile which struck the plaintiff was the same one that she saw parked at the southeasterly corner of the intersection before starting to cross the street, relate to mere cir-

cumstances in evidence which, while part of the general picture existing at the time and place of the accident, would not be of assistance in deciding the *real issues* involved in the case.

The questions in the defendant's third, fourth and sixth requests for special findings concern the issues of the plaintiff's due care and of the defendant's negligence. The trial justice in his charge, with reiteration and at considerable length, carefully instructed the jury as to the point covered by these questions for special findings, and he particularized the different factors involved which the plaintiff had to establish by a fair preponderance of the evidence before she was entitled to a verdict in her favor. Assuming that the questions for the special findings above mentioned were in proper form, yet, the granting of them in the circumstances, thus interjecting them in the case, would have tended to confuse the jury. We fail to see how the defendant was prejudiced by the refusal of the trial justice to submit to the jury these three requested issues for special findings, and the defendant does not point out or suggest any way in which he might have been prejudiced thereby. His exception on this point is overruled.

All of the defendant's exceptions are overruled, and the case is remitted to the superior court for entry of judgment on the verdict.

*Fergus J. McOsker,* for plaintiff.

*Perry Shatkin, M. Louis Abedon,* for defendant.